Judge Marshall

delivered the Opinion of the Court.
This bill was filed by the infant children of Theodocia Nelson, deceased, formerly T. Bush, who suing by James Nelson, their father and next friend, ask for their distributive share of the personal estate of their maternal grandfather, Robert V. Bush, who had survived their mother. The bill, also, seeks a partition of real estate and slaves of the decedent Bush; but that part of the case is not now presented for the revision of this Court.
First. The principal question now made, is whether the distributive share of the complainants in the personal estate of their grandfather is chargeable with advancements made to their father and mother,
It is contended that the twenty eighth section of the statute of distributions of 1797, (Slat. Law, 783,) re *105 quires only those persons who have actually received advancements to bring them into hotchpot; and that consequently, when the issue of such children of an intestate as have received advancements become, by the death of their parent before that of the more remote ancestor, the immediate distributees of the estate of the latter, they are entitled to come into the distribution without accounting for what their deceased parent has received, and to claim as much as such parent might have claimed if he or she had received nothing, and had survived the more remote ancestor. We cannot, however, admit either the premises or the conclusion.
Grand children claim a distributive share of their grandfather's estate, in right of their dec'd. mother; admissions of their father (that he had received advancements,) made after the grandfather's death, are not evidence a-against the grandchildren, as they do not claim thro' him. His deposition might be used to prove the fact
If the principle of hotchpot had been first introduced into the distribution of personal estates by the section above referred to, and if it were admitted that, by a strict construction, the terms of that section should be understood as requiring only the actual recipient of the advancement to bring it into hotchpot, it would not follow, even from these concessions, that the equitable principle thus introduced by statute, and applied in terms to the ordinary case of the descendant who had received the advancement surviving the ancestor who had given it, should not and would not be extended, practically, by courts of equity, to the case, which sometimes happens, and to which the same principle is, in point of justice and equity, equally applicable, of the recipient of the advancement dying before the giver, and leaving representatives who, in his or her right, would claim a share in the personal estate of the giver.
But the principle of hotchpot had prevailed in the English and American law, long before the enactment of this statute; and the established doctrine, in relation both to real and personal estate given to s child by way of advancement, has long been that, neither the child who had received the advancement, nor his or her representatives afterwards coining in for partition or distribution in the same right, shall receive any thing until they bring the advancement into hotchpot. The statute, being entirely affirmative in its language, does not repeal any part of this doctrine, and, as we think, did not intend to alter *106 it. If, therefore, it were clear that the positive requisition of the statute as to who shall bring advancements into hotchpot, extended only to those who had actually received them, the equitable doctrine and practice of requiring their representatives claiming distribution to bring in advancements made to the persons whom they represent, and in whose right they claim a share, would still prevail, notwithstanding they were not literally embraced by the terms of the statute. But we are of opinion that, the statute may and should be construed as embracing all such cases. This was in effect decided in the case of Barber vs Taylor’s Heirs, at the present term.
The statute intends to enforce, as far as may be, the principle of equality. It goes upon the idea that the father intends equality among his children; that advancements made to any of them, are made as a part of their share in his estate, and in anticipation of the final distribution of it, and that he intends that, when the time for that distribution comes, the share upon which such advancement may have been made, shall be proportionably diminished, into whosesoever hands it may ultimately fall. And the statute carries out this presumed intention.
Whatever, therefore, was given by Robert V. Bush, to his daughter Mrs: Nelson, or to her husband during their marriage, as a part of her expected share in his estate, and whatever, after her death, was given by him to her children, or to her surviving husband for them, or as a part of the share to which she would have been entitled had she survived her father, is to be considered as an advancement on account of that share, and should be brought into hotchpot, or accounted for, by her children claiming distribution in her right.
Second. These principles seem to have been adopted in framing the decree in this case. But we are of opinion, that the amount charged against the complainants as advanced to their mother and father by their grandfather, is greater than any legitimate proof in the record will authorize. As the case now stands, we consider no advancements as being sufficiently proved, except those contained in the account marked C, which was made out *107 by R. V. Bush himself, and purports to be a list of the property and money given to his daughter, Mrs. Nelson, and her husband; and the item of two hundred and thirteen dollars, evidenced by a memorandum, dated shortly before said Bush’s death, written by Nelson, and importing that Bush had then given to him two hundred and thirteen dollars “as a part of his legacy.”
In a suit for distribution, an administratrix was made defendant as such, who also claimed a personal interest in certain slaves of the estate. She employed counsel to defend the suit; who, it is presumed, was to attend to her individual interest also; and, in the absence of any definite proof as to the service rendered for each interest, one half is presumed to have been for her own benefit, and she is allowed a credit, as administratrix, for the other half only.
A few small items at the end of the account C. are not valued therein. But, although we cannot ascertain their precise value, it is entirely evident that, including them with the other items now recognized as advancements, the amount will be far short of the sum of two thousand dollars charged against the complainants.
Of the account B. purporting to contain charges against James Nelson and in favor of the estate of R. V. Bush, there is no proof. And the charges against the complainants for advancements beyond those above recognized, seem to rest only upon proof of the declaration of their father, made after the death of their grandfather whose estate is to be distributed, to the effect that the decedent R. V. Bush had made him equal with his two sons, who had received two thousand dollars each, by way of advancement. Such declarations made by Nelson, at a time when he had no further interest in the subject, are not evidence against his children, who do not claim under or through him, but claim in right of their deceased mother. If the fact could not have been otherwise proved, James Nelson might himself have been examined by order of the Court
Third. Our attention has been directed to several of the credits allowed to the administrators of R, V. Bush, in the settlement of their accounts made by an auditor appointed in this suit. But we deem it necessary only to notice the credit of fifty dollars allowed for the fee of their counsel employed in this case. It appears from the answer of the administratrix who has taken the principal part in the defence, that she sets up a claim in her own right to a valuable portion of the slaves in which the complainants claim on interest as a part of their grandfather’s estate. And, as it must be presumed that her counsel *108 were employed to advocate this claim, as well as to see that no injustice was done to her rights as the widow and administratrix of Robert V. Bush, it is obviously unjust that the whole burthen should fall upon the estate. And, as the case seems to admit of no more satisfactory criterion for determining how much should be borne by herself individually, we think the fee, which is proved to be a reasonable one for the whole case, should be paid equally by herself and the estate which she represents. And that the credit of fifty dollars on this account, should be reduced to twenty five dollars.
Wherefore the decree, is reversed, and the cause is remanded, with directions to ascertain, by a commissioner, the value of the items in the account C, which are not therein valued; and after thus ascertaining the full amount of the advancements chargeable to the complainants, according to the principles of this opinion, and correcting as above directed the item credited to the administrators on account of the fee of counsel in this case, to render a decree in favor of the complainants’, for their share of the personal estate of the said R. V. Bush.