CASE 73.—SUIT BY SUE C. MONTGOMERY'S TRUSTEE
   AGAINST C. C. BROWN TO STAY A MORTGAGE
   FORECLOSURE SALE UNTIL PLAINTIFF'S AL-
   LEGED LIEN AND PRIORITY COULD BE ASCER-
   TAINED.—Sept. 30, 1909.

## Montgomery's Trustee v. Brown

Appeal from Spencer Circuit Court.

C. C. MARSHALL, Circuit Judge.

Petition dismissed on demurrer, and plaintiff ap-
peals.—Reversed.

1. Wills—Construction — Advancements — Equalization Between
   Legatees.—Where  testator's  will  indicated  an  intent
   to divide his property equally among his widow and two
   children, and to charge each with advancements made,
   the proper method of settlement was to place as in hotchpot
   the advancement and the property especially devised and
   valued in the will, and divide the sum by three, the quotient
   representing the value each should receive, and then deduct
   from the share of each the value of the advancement made,
   and, if such value in addition to the property specifically
   devised exceeded one-third of the whole, the devisee receiv-
   ing the excess should pay the one who received less than
   the third a sum sufficient to equalize.

2. Wills—Devisee's Interest—Mortgage—Notice.—Where a devi-
   see of real estate charged with advances was required to
   execute a note to his mother for $506.41, to equalize their
   shares under the will, and then mortgaged his interest in
   the property devised, the mortgagee was bound to take no-
   tice of the public records containing the will, and was
   charged with knowledge of such facts.

3. Wills—Advancements—"Debt."—Though an advancement is
   not a "debt" in any sense, testator may nevertheless impose
   such condition on his devise to the beneficiary advanced as
   he sees proper and as are not unlawful.

Montgomery's Trustee v. Brown.

4. Wills—Advances—Effect.—A provision charging a devisee with a specified sum as an advancement was equivalent to requiring him to account to the estate in the final settlement for such sum as a condition to receiving the devise and to charge the amount as a lien on the real estate devised to him.

5. Wills—"Advancement."—Where testator devised certain real estate to his son charged with advancements made to him, the term "advancement" was used in its popular, and not in its technical, sense.

6. Descent and Distribution—Advancements—Partition.—In case of intestacy, advancements must be brought in hotchpot if the heir would participate in the partition of the estate.

7. Where, in the settlement of an estate, one of the devisees, in order to equalize his mothers' share, executed a note to her for $506.41, having received as advancements more than his share of the estate, and it also appeared that the estate had been completely settled, and that the note remained unpaid, it would be presumed that the devisee's interest as residuary legatee was insufficient to pay the note.

J. B. WEAVER and EDWARDS, OGDEN & PEAK for appellant.

POINTS AND AUTHORITIES.

1.    The will of J. Montgomery, Sr., was a matter of public record, and upon its face showed a charge of $900 in favor of the other devisees against the interest of J. Montgomery, Jr., and for which charge the estate creates a lien in favor of the remaining devisee.    (Ky. Stat., Sec. 2066.)

2.    The agreement entered into between the devisees of J. Montgomery, Sr., which gave J. Montgomery, Jr., more than his share of his father's estate to be accounted for out of the life interest devised to him, was an equitable assignment of the recipient's share of the realty, or, rather, the income therefrom, to the extent necessary to satisfy the agreement.    Thompson's Executor v. Stiltz 29 Rep., 1075.

3.    If any one purchased from, or took a mortgage upon, the interest of J. R. Montgomery, Jr., he did so on notice of the state of the title, and, therefore, stands in no better attitude than his vendor mortgagor.    Scobee v. Bridges, 87 Ky. 427; Taylor v. Jones, 97 Ky. 201; Alderson v. Alderson, 26 Rep. 1262.

JOHN A. FULTON and E. E. McKAY, counsel for appellee.

Authorities cited that no claim or lien exists, unless some special fund is charged on some specific property, or the will in unmistakable terms provides for an equalization of the devisees, on final settlement. Ecklert v. Galbreath & Sail, 12 Bush 71; Phillips v. Phillip's Adm'r., 93 Ky. 498.

Authorities cited that if interest of devisee is alienated, without suit brought as provided by statute, it bars claim of creditors of testator or others to subject estate devised and alienated by devisee to lien or satisfaction of such claim or creditor or others. Lancaster v. Wolf, 110 Ky. 768; Anderson v. Summers, 69 Ky. 423; Kelley v. Culver, 75 S. W. 272.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The will of J. R. Montgomery is in these words:

"I, J. R. Montgomery, Sr., of the town of Taylorsville, County of Spencer, and State of Kentucky, do make and publish this my last will and testament, to wit:

"1st.—I desire all my just debts and funeral expenses to be paid out of my estate.

"2nd.—I give to my son, J. R. Montgomery, Jr., my encyclopedia.

"3rd.—I desire that the remaining portion of my library be divided equally between my beloved wife, Sue Montgomery, and my daughter, Mattie V. Vandyke.

"4th.—It is my will and desire that the residue of my estate be divided equally between my wife, Sue C. Montgomery and my two children, Mattie V. Vandyke, and J. R. Montgomery, the same to be held for their use and benefit in the following prescribed manner, namely: That portion of my estate that shall fall to my wife, Sue C. Montgomery, whether it be real or personal, I desire the same to be placed in the hands of the Louisville Trust Company, whom I ap-

point as trustee for my said wife. The said Louisville Trust Company is to take control and management of said estate that shall go to my wife, whether it be real or personal. If my wife so desire she shall be allowed to retain and hold as a home my house and lot where we now reside, at a valuation of one thousand dollars. The said Louisville Trust Company shall collect all rent, interests, etc., and pay the same over to my wife (less their commission) so long as she may live. At her death, it is my wish that her portion of my estate shall revert · back to my two children, and be divided equally between them, and to be held for their use and benefit as is herein-. after provided in this paper.

"5th.—The portion of my estate that shall go to my daughter, Mattie V. Vandyke, it is my will and desire that the same shall be placed in the hands of my brother-in-law, E. D. Bourne, whom I appoint as her trustee.

"Now, whereas, I have invested the sum of twelve hundred dollars and hold a title for the same in what is known as the Barker farm, I therefore desire to charge her with the said twelve hundred dollars so paid, and direct that after my death the title to the said tract of land shall be conveyed to her, and to be held in trust for her use and benefit. However, if it is thought by her trustee that it will be to my daughter's best interest to sell the Barker land and reinvest the money with any and all other money due her from my estate, then he is not only empowered, but he is earnestly requested to do so, but only by her consent shall this be done. It is my will and I so direct that all my daughter's interest in my estate shall be invested in good real estate, that it will make for her a good and permanent home during her life.

"At her death, then it is my will that it shall go to her children; should she be bereft of children by death, then I desire that her interest in my estate shall revert back to my estate, and be distributed between my legal heirs.

"6th.—Now, whereas, I have advanced to my son, James R. Montgomery, the sum of nine hundred dollars, with which to go into business, I hereby charge him with that amount in this writing. I also will and bequeath to my said son, one store house now in course of erection, with the lot on which it stands, on the south side of Main street in the town of Taylorsville, Ky. The cost of construction of said house will be about sixteen hundred dollars, which amount I desire that my son shall be charged with by my executor. I desire that my said son shall have and hold said house and lot, and have the use and benefit of same during life. At his death should he die without children to revert back to my estate, and be divided between my legal heirs. Any other property belonging to my estate, not herein named, whether real or personal, I desire the same to be equally divided between my heirs so as to make them all equal.

"This is the 14th day of February, 1899.

"J. R. MONTGOMERY, SR.

"Attest:—

"W. M. BLACK,
"JOSEPH TUCKER."

## CODICIL.

"I do now make and publish this codicil to my foregoing will:

"First:—It is my desire that the portion of my estate bequeathed to my daughter, Mattie V. Vandyke, shall be her separate estate free from the control, use or liabilities of her husband.

"Second:—Since completing the store house bequeathed to my son, J. R. Montgomery, I find that it cost more than I expected, and now fix the value of said house at twenty-five hundred dollars, and desire that my said son be charged with $2,500 by my executor in place of $1,600 named in my will, and I desire that the estate given to my said son shall go to his wife, Sadie D. Montgomery for her use and benefit during life, should she survive him, and at her death to revert to my estate as in my will provided, however, should she again marry, the estate is to revert back just as if she had died.

"This codicil is not to affect the control of the trustee hereinbefore given, and Sadie D. Montgomery is to take her interest under the same conditions provided for her husband.

"This August 14th, 1900.

"J. R. MONTGOMERY, SR.

Upon a settlement made between the executor and devisees it was found that James R. Montgomery, Jr., the devisee, had received $506.41 more than one-third in value of the testator's estate, and that the widow of the testator had received that much less than her one-third. To equalize them, James Montgomery, Jr., executed his note to the executor for $506.41, and the executor assigned the note to the trustee of Mrs. Sue C. Montgomery, the widow. In the meantime James Montgomery, Jr., had executed a mortgage to appellee Brown upon the former's life estate in the lot and storehouse in Taylorsville. Brown sued to foreclose his mortgage lien, but failed to make Mrs. Montgomery and her trustee parties. A decree of sale was entered, enforcing the lien of Brown, and the master was about to execute the judg-

ment when this suit was filed by Mrs. Montgomery's trustee, appellant, to stay the sale until her lien for the $506.41 was adjudged and its priority ascertained. The court sustained a demurrer to the petition, and dismissed it.

It becomes necessary, first, to determine the quality of the estates devised to J. R. Montgomery, Jr., and to Sue C. Montgomery, the widow. Each took a life estate in the property devised by the will to them (except the specific personal items mentioned in the first 3 items), with remainder over. The intent expressed in the will is clear that the testator intended an equal division of his estate among the three devisees named—his widow, son and daughter. While he gave to each certain specific real property, it was valued in the will with the intention that the devisees should be equalized. Equality is the dominant idea in the will. So, when it was declared that the son was to be charged with an advancement of $900 which had been made to him, it was the testator's intention that that sum should be accounted for in the division in order to accomplish the equality aimed at. If the testator's intention had been to devise the storehouse and lot to James R. Montgomery, Jr., unconditionally, except as to his having a life estate only in it, it would not have been necessary to have valued it in the will, unless there was considerable estate comprised in the residuum. But it is not shown that there was a surplus of any considerable quantity. The correct method of settlement was to place, as in hotchpot, the advancement and the property specifically devised and valued in the will, then divide the sum by three. The quotient would represent the value each was to receive. Then deduct from the share of J. R. Montgomery the advancement made to him.

Each should have received the property specifically devised. But if that, as valued by the will, gave to any one of them more than a third of the whole, that one would have been required to pay to the one or those receiving less than a third each a sum sufficient to equalize them. Such, substantially, we gather from the record, was the course pursued. In that way the result was that James R. Montgomery was shown to have received $506.41 more than, and Mrs. Sue C. Montgomery less than, a third of the whole. When James R. Montgomery, Jr., executed his note to the executor for the difference in values, and the latter assigned it to Mrs. Montgomery, the effect was that result aimed at by the will.

Appellee contends that he is an innocent purchaser for value without notice of the equity of Mrs. Montgomery. Conceding that a mortagee stands in the same relation as a purchaser, still he was not without notice; for he must take notice of the public records containing the will.

Appellee further contends that an advancement is not a debt due to the testator, and that it can never be the basis of a recovery against the heir or devisee to whom the advancement had been made. It is true that an advancement is not a debt in any sense. But the testator had a right to impose such conditions upon his devise as he saw proper, and that were not unlawful. When he required the $900 to be charged to J. R. Montgomery, Jr., as an advancement, it was equivalent to requiring him to account to the estate in a final settlement for that sum as a condition to his receiving the devise made to him. When James R. Montgomery, Jr., elected to take under the will, he was required to take subject to its conditions. The condition that he was to be charged

with the $900 in ascertaining the shares due each devisee was equivalent to making that sum a charge upon the property devised to him, and in behalf of the one or ones who received less than a third each.

In using the term "advancement" the testator did not intend to restrict its meaning to its technical, but intended to employ it in its popular, sense. In the case of wills, when advancements are spoken of, the term is not taken in its technical sense. Barker v. Comins, 110 Mass. 477; Eisner v. Koehler, 1 Dem. Sur. (N. Y.) 277; Hammett v. Hammett, 38 S. C. 50, 16 S. E. 293, 839.

In case of intestacy advancements must be brought in hotchpot if the heir would participate in the partition of the estate. Haden v. Haden, 7 J. J. Marsh. 168; Nelson v. Bush, 9 Dana, 104.

As in intestacy equality is the bottom of the law of descent and distribution, so, where the will manifests the same purpose requiring advancements to be accounted for, they should be treated as in case of intestacy. It is said by appellant that James R. Montgomery, Jr., may have accounted for, and ought to have been required to account for, his advancement out of the residuum devised. Even so. But the petition alleges that the estate had been completely settled, and that James R. Montgomery had never accounted for any part of the $506.41 of the advancement.

From this allegation we gather that there was not a sufficient residuum to satisfy James R. Montgomery, Jr.'s advancement, and that the balance of $506.41 is the part of the $900, charged in the will against the devisee which has not been satisfied, and to satisfy which there was no other estate but his interest in the storehouse and lot.

The judgment is reversed, and cause remanded, with directions to overrule the demurrer to the petition.